1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   PATRICK W. HOGGAN, an individual,          No. 2:21-cv-01862-TLN-CKD

12                   Plaintiff,

13          v.                                   **ORDER**

14   SPECIALIZED LOAN SERVICING,
     LLC, a Delaware Limited Liability
15   Company; AFFINIA DEFAULT
     SERVICES, LLC, a Florida Limited
16   Liability Company; and DOES 1 through
     100, inclusive,
17
                     Defendants.
18

19

20          This matter is before the Court on Plaintiff Patrick W. Hoggan's ("Plaintiff") Motion for a

21   Temporary Restraining Order ("TRO").  (ECF No. 7.)  No opposition has been filed by

22   Defendants Specialized Loan Servicing, LLC ("SLS") and Affinia Default Services, LLC

23   ("Affinia") (collectively, "Defendants").  For the reasons set for the below, Plaintiff's motion is

24   GRANTED.

25   ///

26   ///

27   ///

28   ///

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The instant motion seeks to enjoin Defendants from proceeding with a non-judicial foreclosure on Plaintiff's property located at 6544 Arcade Creek Way, Orangevale, CA 95662 (the "Property").  (ECF No. 7.)  Plaintiff purchased the Property in 1998 and entered into an agreement to refinance with Quicken Loans, Inc. ("Quicken") on July 6, 2005.  (ECF No. 1-1 at 7.)  Quicken loaned Plaintiff $52,500.000 (the "Loan") secured by the Property — then and now Plaintiff and his family's primary residence and home — through a second position Deed of Trust.  (*Id.*)  Mortgage Electronic Registration Systems, Inc. ("MERS") was the named beneficiary and Orange Coast Title Company was the named trustee.  (*Id.* at 7–8.)

Plaintiff maintained his payments on the Loan until 2008, when he had a business failure that ultimately resulted in a bankruptcy in 2010.  (*Id.* at 8.)  Plaintiff subsequently began to fall behind on his payments and believed the second position Deed of Trust was extinguished during bankruptcy proceedings.  (*Id.*)  Plaintiff entered into a modification with his first position Deed of Trust through Ocwen Loan Servicing and believed his second position Deed of Trust was extinguished with this refinance if it was not extinguished in the bankruptcy proceedings.  (*Id.*)  On May 20, 2021, Affinia, on behalf of SLS, recorded a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") on the Property.  (*Id.*)  Plaintiff maintains he was never provided with notice or a recording to inform him the previous trustee — First American Title — had assigned, transferred, or sold its rights as the trustee under Deed of Trustee to Affinia.  (*Id.*)

Plaintiff contacted SLS to confirm the debt and called SLS to request documents authenticating the loan, but SLS did not respond.  (*Id.*)  On September 9, 2021, Affinia, on behalf of SLS, recorded a Notice of Trustee's Sale ("NOTS") on the Property.  (ECF No. 7 at 4.)  Plaintiff argues a controversy has arisen between himself and Defendants "because of Defendant's negligent misrepresentations preventing Plaintiff from curing [his] default and extinguishing the transaction by operation of law."  (*Id.*)  Plaintiff maintains Defendants acted in concert to deprive him of his civil rights by taking the Property without due process of law.  (*Id.* at 4–5.)

On August 25, 2021, Plaintiff filed a Complaint in Sacramento County Superior Court alleging claims for: (1) a violation of the Truth in Lending Act; (2) violations of the Rosenthal and Federal Fair Debt Collection Practices Act ("FDCPA"); (3) promissory estoppel; (4) wrongful foreclosure; (5) negligent misrepresentation; (6) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200–17210; and (7) violation of Cal. Civ. Code § 2924.17.  (ECF No. 1-1 at 9–16.)  On October 8, 2021, Defendants removed the action to this Court.  (ECF No. 1.)  On November 5, 2021, Plaintiff filed the instant motion for a TRO requesting this Court to enjoin "Defendants and their agents, servants, and employees from proceeding with foreclosure and trustee's sale set for Tuesday, November 9, 2021" and to issue an order to show cause as to "why a preliminary injunction should not be granted to enjoin Defendants and [their] agents, servants, and employees from foreclosing on the Loan or selling the Property at a trustee's sale or otherwise during the pendency of this action."  (ECF No. 7.)

## II.      STANDARD OF LAW

A TRO is an extraordinary remedy.  The purpose of a TRO is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id*.  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id*.  Simply put, plaintiffs must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in [p]laintiffs' favor in order to succeed in a request for preliminary injunction.  *Id*. at 1134–35.

### III.   ANALYSIS

In Plaintiff's motion for a TRO, he argues that he "will prevail on the underlying merits of this case as Defendants have already committed numerous wrongful acts against Plaintiff," he will suffer immediate and irreparable harm in the absence of an injunction, and the relief sought will not have an adverse effect on Defendants or the public.  (ECF No. 7 at 6.)  The Court will address each element of the *Winter* test in turn.

#### A.   Likelihood of Success on the Merits

Plaintiff argues in his motion that it is "more than likely [he will] be successful in the claims listed in [his] Complaint."  (ECF No. 7 at 7.)  While mindful of the fact that Defendants have not had the opportunity to submit argument in opposition to Plaintiff's motion for a TRO, and while likelihood of success on the merits is a close question, the Court nevertheless agrees that Plaintiff has sufficiently established a likelihood of success on the merits as to some of his claims at this time.[1]

---

[1]   The Court does not evaluate all claims in Plaintiff's Complaint, but rather only the claims he addresses in the instant motion.

i.        *Claim Two: Violation of the Fair Debt Collection Practices Act*

"In order to state a claim under the FDCPA, a plaintiff must show: 1) that he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA." *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011). "Debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "The legislative history of [§] 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perez v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-1708 MCE KJN PS (TEM), 2015 WL 9286554, at *2 (E.D. Cal. Dec. 21, 2015) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

Here, Plaintiff alleges "SLS is a debt collector as defined by both the FDCPA and the Rosenthal Fair Debt Collection Practices Act." (ECF No. 1-1 at 9.)  However, Plaintiff also alleges SLS was responsible for servicing his loan after he refinanced — meaning that SLS was servicing his mortgage. (*Id.* at 8.)  Because mortgage servicing companies are not debt collectors within the meaning of the FDCPA, Plaintiff has not adequately alleged the third element of his FDCPA claim — whether SLS is a debt collector. *See Perez*, 2015 WL 9286554, at *2. However, the Court finds the rest of the elements are adequately pleaded.  With respect to the first element, Plaintiff alleges that he refinanced his mortgage with Quicken Loans, Inc., the implication of which is that he is a consumer of Quicken Loans, Inc. (ECF No. 1-1 at 7.)  With respect to the second element, Plaintiff alleges the debt was taken for the Property, "Plaintiff's principal residence and home, meaning it was taken for personal purposes. (*Id.* at 6.)  With respect to the fourth element, Plaintiff alleges "[t]he FDCPA prohibits a debt collector from making a false representation of the amount, character[,] or status of a debt" and "SLS misrepresented the amount of the debt by including interest and fees that it is federally prohibited

1    from collecting on . . . Plaintiff's loan in its reinstatement calculation, which was included in the

2    recorded notice of default." (*Id.* at 10.)

3        Based on the foregoing, even though the entire claim is not adequately pleaded, the Court

4    finds there are serious questions raised as to the merits of Plaintiff's FDCPA claim. *See*

5    *Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) ("Serious questions are

6    substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more

7    deliberative investigation . . . [they] need not promise a certainty of success, nor even present a

8    probability of success, but must involve a fair chance of success on the merits." (internal

9    quotation marks and citations omitted)).

10                    *ii.        Claim Three: Promissory Estoppel*

11       "Under California law, the elements of promissory estoppel are[:] (1) a promise clear and

12   unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance

13   must be both reasonable and foreseeable; (4) and the party asserting the estoppel must be injured

14   by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012)

15   (citing *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887 (2005)).

16       Here, with respect to the first element, Plaintiff alleges "SLS agreed to send Plaintiff

17   documentation confirming the debt and providing Plaintiff with loss mitigation options." (ECF

18   No. 1-1 at 10.) With respect to the second element, Plaintiff alleges that he "relied upon the

19   promises made by SLS," as he did not pursue "alternative loans and refinancing for the Property

20   and to the underlying Loans secured by the Property." (*Id.*) With respect to the third element,

21   Plaintiff alleges his reliance was both reasonable and foreseeable, "as SLS was the successor

22   beneficiary under the Deed of Trust." (*Id.*) With respect to the fourth element, Plaintiff alleges

23   he "has been injured to his detriment" by relying on SLS's promises, as he "now faces the

24   imminent loss of title and possession to his Property." (*Id.* at 11.)

25       Based on the foregoing, Plaintiff has adequately pleaded a promissory estoppel claim.

26   ///

27   ///

28   ///

###### iii.        Claim Five: Negligent Misrepresentation[2]

"In order to state a claim for negligent misrepresentation, a plaintiff must show defendants: (1) made a misrepresentation of a past or existing material fact[;] (2) without reasonable ground for believing it to be true[;] (3) with intent to induce another's reliance on the fact misrepresented[;] (4) justifiable reliance on the misrepresentation[;] and (5) resulting damage." *Woods*, 2017 WL 3421973, at *6 (citing *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 785 F. Supp. 2d 799, 822 (N.D. Cal. 2011); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).

Here, the Court finds Plaintiff has stated only conclusory allegations.  With respect to the first and second elements, Plaintiff alleges "Defendants, through their agents and employees, made representations to Plaintiff that they knew or should have known were false, or had no reasonable grounds to believe were true, as described above." (ECF No. 1-1 at 11.)  As previously noted, Plaintiff alleges "SLS agreed to send Plaintiff documentation confirming the debt and providing Plaintiff with loss mitigation options." (*Id.* at 10.)  Plaintiff does not explain how SLS had no reasonable grounds to believe the representations were true.  With respect to the third element, Plaintiff does not state Defendants intended to induce his reliance.  (*See id.*)  With respect to the fourth element, Plaintiff alleges he "actually and reasonably relied on the representations made by Defendants and/or their agents and employees," but does not provide any facts to explain how he relied on the representations.  (*Id.* at 12.)  With respect to the fifth element, Plaintiff alleges he "has been and continue[s] to be damaged in an amount to be proven at trial."

///

---

[2]        Although this Court has previously held that claims for negligent representation must meet Rule 9(b)'s heightened pleading requirements, *see Fernandes v. TW Telecom Holdings, Inc.*, No. 2:15-cv-01976-TLN-CKD, 2016 WL 704723 at *7 (E.D. Cal. Feb. 23, 2016), it acknowledges that a growing trend of authority within the Ninth Circuit and the Eastern District have applied Rule 8 to California law negligent representation claims.  *Woods v. Davol, Inc.*, No. 16-cv-02616-KJM-CKD, 2017 WL 3421973, at *7 (E.D. Cal. Aug. 9, 2017) (citing cases).  The Court declines to decide whether Rule 8 or Rule 9(b) applies to negligent misrepresentation claims in the instant Order, as Plaintiff's claim fails to meet the requirements of Rule 8.

Based on the foregoing, the Court finds that Plaintiff has not alleged sufficient facts to adequately state a claim for negligent misrepresentation.

***iv.        Claim Seven: Violation of Cal. Civ. Code § 2924.17***

Prior to recording or filing a notice of default or a notice of sale, "a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the foreclose, including the borrower's loan status and loan information." Cal. Civ. Code § 2924.17(b). "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of [§] . . . 2924.17." Cal. Civ. Code § 2924.12(a).

Here, Plaintiff alleges "SLS failed to properly calculate the amount due and owing under Plaintiff's loan, considering SLS and the beneficiary are prohibited from accruing interest and fees on the loan for the time it was charged off." (ECF No. 1-1 at 15.) Plaintiff further alleges SLS still "charged interest and other fees for the time the loan was charged off: and therefore the notice of default "contains an illegally inflated amount required to reinstate the loan." (*Id.*) Plaintiff states the "reinstatement amount is only possible if the lender and SLS have continued to accrue interest on the loan during charge-off, in violation of [the Truth in Lending Act]." (*Id.*) Plaintiff alleges "[o]stensibly, when SLS took over servicing on the loan, it could see from the transferred loan file that no statements had been sent on this loan in many years, and that the loan had been [c]harged off" and "SLS should have ensured that it calculated the amount due and owing in accordance with the requirements of [the Truth in Lending Act]." (*Id.*) Plaintiff contends SLS "failed to do so" and "failed to review 'competent and reliable evidence' in providing the information that it included in the notice of default," which" entitles Plaintiff to injunctive relief." (*Id.*)

Based on the foregoing, Plaintiff has alleged SLS did not review Plaintiff's loan status and loan information to substantiate the default and the upcoming foreclosure. Accordingly, the Court finds Plaintiff has adequately stated a § 2924.17 claim.

///

///

8

*v.      Claim Six: Unfair Business Practices*

California law prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Section 17200 incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law." *Causey v. Portfolio Acquisitions, LLC*, No. 2:10-cv-2781-KJM-EFB PS, 2013 WL 246916, at *3 (E.D. Cal. Jan. 22, 2013). A § 17200 claim can be based on a violation of almost any federal, state, or local law. *Id.* (citing *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994)).

Here, Plaintiff alleges "SLS failed to provide Plaintiff with any periodic mortgage statements for the underlying Loan and have attempted to steal Plaintiff's home without any notice or disclosure of the purported debt." (ECF No. 1-1 at 12.) Plaintiff further alleges "Defendants have been systematically violating the provisions of California Civil Code [§§] 2924, et seq., as it pertains to their obligations under the Deed of Trust and proceeding with a non-judicial foreclosure." (*Id.* at 13.) As the Court has found Plaintiff has adequately stated a claim for violation of California Civil Code § 2924.17, the Court finds Plaintiff therefore also adequately states an unfair business practices claim.

## B.      Irreparable Harm

The Court finds Plaintiff has adequately demonstrated a likelihood of imminent and irreparable harm absent injunctive relief. Specifically, Plaintiff argues he will suffer an irreparable harm in the absence of an injunction that cannot be compensated by monetary damages — namely, "real property is unique, such that injury or loss due to eviction cannot be compensated in damages." (ECF No. 7 at 11 (citing Cal. Civ. Code § 3387).) Plaintiff further states, "[i]f the trustee's sale is allowed to proceed before this action is resolved, Plaintiff will suffer great and irreparable injury in that Plaintiff will lose title to his Property, be rendered homeless, and may lose his rights in this action and any claim to the Property." (*Id.* at 12.) Plaintiff contends he "will be displaced from the Property, which is unique in that it is Plaintiff's personal and primary residence." (*Id.*) The Court agrees that loss of real property is a unique harm that cannot be adequately compensated by damages. *See Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No. CV 11-01539 MMM (JEMx), 2011 WL 13220305, at * (C.D. Cal.

1    June 29, 2011) (citing cases) ("[T]he threatened loss of real property through foreclosure

2    constitutes an irreparable injury.").

3         Given the foregoing, the Court finds that Defendant has sufficiently shown a likelihood of

4    irreparable harm in the absence of a TRO.

5                         C.    Balance of Equities

6         Having found there are serious questions going to the merits of Plaintiff's claims and a

7    likelihood of irreparable harm absent an injunction, Plaintiff must demonstrate the balance of

8    hardships tips sharply in his favor. *See Alliance*, 632 F.3d at 1134–35. A court balancing the

9    equities will look to possible harm that could befall either party. *See CytoSport, Inc. v. Vital*

10   *Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*, 348 F. App'x 288 (9th Cir.

11   2009). Here, Plaintiff only notes that "the relief sought will have no adverse effect on

12   Defendants' interest." (ECF No. 7 at 6.)   In response to this Order, if Defendants can establish

13   that they can lawfully move forward with the non-judicial foreclosure of the Property, the

14   possible harm to them in temporarily restraining the foreclosure could include the costs associated

15   with preparing for the foreclosure again. By contrast, without injunctive relief, the foreclosure

16   will proceed as scheduled and as previously noted, "Plaintiff will lose title to his Property, [he

17   and his family] will be rendered homeless, and [he] may lose his rights in this action and any

18   claim to the Property." (ECF No. 7 at 12.) Most importantly, Plaintiff argues injury or loss due

19   to eviction and loss of the Property cannot be compensated in damages, as real property is unique.

20   (*Id.* at 11.) For these reasons, the Court finds the balance of equities sufficiently tips in Plaintiff's

21   favor.

22                         D.    Public Interest

23        The Court finds the public interest element is neutral. "The public interest analysis for the

24   issuance of a preliminary injunction requires [the Court] to consider whether there exists [s]ome

25   critical public interest that would be injured by the grant of preliminary relief." *Credit Bureau*

26   *Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1123 (E.D. Cal. Jul. 12, 2010) (citing *Indep.*

27   *Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009)). Plaintiff does

28   not suggest, nor does the Court find, the public's interest would be affected by whether the Court

                                            10

1   grants or denies injunctive relief.

2              E.      Procedural Deficiencies

3         There are procedural grounds that may support the Court's denial of Plaintiff's motion.

4    Eastern District of California Local Rule 231(c) requires other documents to be filed in

5    conjunction with a motion for a TRO, including bond information — documents Plaintiff has

6    failed to submit.  However, the bond requirement set forth in Rule 65 is discretionary and in light

7    of Plaintiff's substantial compliance with all of the other requirements of Local Rule 231(c), the

8    Court therefore waives this requirement.  *See Governing Council of Pinoleville Indian*

9    *Community v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (citing *People of*

10   *California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir. 1985))

11   ("[C]ourts have discretion to excuse the bond requirement . . . .").  The Court has concluded there

12   is no realistic likelihood of harm to Defendants from prohibiting them from delaying the non-

13   judicial foreclosure of the Property.  *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir.

14   2003) ("The district court may dispense with the filing of a bond when it concludes there is no

15   realistic likelihood of harm to the defendant from enjoining his or her conduct.").  Furthermore,

16   the Court finds waiver of the bond requirement is appropriate here because the harm to

17   Defendants will be slight.  *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1116

18   (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the

19   enjoined party is slight or where the movant has demonstrated a likelihood of success.").  The

20   Court therefore waives the bond requirement.

21        Based on the foregoing, Plaintiff has met each element of the *Winter* test.  *Winter*, 555

22   U.S. at 20.  Accordingly, the Court finds a TRO is warranted.

23   **IV.    CONCLUSION**

24        Plaintiff's Motion for a TRO is GRANTED with respect to Plaintiff's request to enjoin

25   Defendants and their agents, servants, and employees from proceeding with foreclosure and

26   trustee's sale set for Tuesday, November 9, 2021.

27        Defendants are ordered to show cause in writing no later than November 22, 2021, as to

28   why Defendants and their agents, servants, and employees should not be restrained and enjoined

1   and why a preliminary injunction should not issue.  Plaintiff may file and serve a reply not later

2   than November 29, 2021.  In order to permit Defendants an opportunity to review and respond to

3   Plaintiff's Motion for a TRO, the Court finds good cause to exercise its discretion to extend the

4   expiration deadline of the TRO.  Fed. R. Civ. P. 65(b)(2).  Accordingly, the TRO will remain in

5   effect for 28 days, or until an order on Plaintiff's request for preliminary injunction issues,

6   whichever is sooner.

7          Pursuant to Local Rule 231(c)(8) and Federal Rule of Civil Procedure 65(b), any party

8   affected by this Order shall have the right to apply to the Court for modification or dissolution of

9   this Order on two (2) days' notice or such shorter notice as the Court may allow.  No bond shall

10  be required.

11         IT IS SO ORDERED.

12  Date:  November 8, 2021

15  _____
    Troy L. Nunley
16  United States District Judge

12